## UNITED STATES DISTRICT COURT
## IN THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ASHLEY DAVIS,**

      Plaintiff,                           Case No.

                                             Hon.

-v-                                        Maj.

**Officer BOUCK and Officer TURNLEY,** sued in their individual capacities,

      Defendants.

_____/

### COMPLAINT FOR DAMAGES WITH A JURY DEMAND

Plaintiff, Ashley Davis, by and through her attorneys, Daniel Manville and Ashlee Duplessis, seeks damages alleging the Defendants violated the 14th Amendment, as well as subjected Plaintiff to False Imprisonment and Intentional Infliction of Emotional Distress.

### Jurisdiction

1. The court has jurisdiction over the Plaintiff's claims of violation of federal constitutional rights, arising under 42 U.S.C. §§ 1983, 28 U.S.C. §§ 1331 and 1343(3) including violations of the 14th Amendment to the United Stated Constitution.

### Venue

2. Venue lays in this court under 28 U.S.C. § 1391 because the events giving rise to the first claim occurred in the Western District of Michigan.

## Parties

3. Plaintiff, Ashley Davis, was engaged in a visitation with her fiancée, Deandra Choice MDOC #326443, at the Michigan Reformatory in Ionia, Michigan during the events described in this complaint.

4. Plaintiff is not an inmate in the Michigan Department of Corrections. She is a civilian of the State of Michigan.

5. Defendant, Correctional Officer Turnley, is an employee of the Michigan Department of Corrections (hereinafter "MDOC") at the Michigan Reformatory (MR) and is being sued in her individual capacity. At all times Defendant Turnley was acting under color of state law.

6. Defendant, Correctional Officer Bouck is an employee of the MDOC at MR and is being sued in his individual capacity. At all times Defendant Bouck was acting under color of state law.

## Statement of Facts

7. On December 2nd, 2019, Plaintiff was visiting her fiancé Deandra Choice at Michigan Reformatory (MR) in Ionia, Michigan.

8. Plaintiff arrived at approximately 2:30 pm for her visit.

9.  Plaintiff was not taken to the visitation room to see her fiancé until approximately 4:00pm.

10. Plaintiff took a restroom break during her visit with her fiancé around 5:30pm. She was able to leave the visitation room and return in a timely fashion.

11. Around 6:30 or 6:45 pm, Plaintiff told Defendant Bouck that she was ready to end the visit and needed to use the restroom immediately. Defendant Bouck stated he would let Defendant Turnley know that Plaintiff was ready to end the visit.

12. About ten minutes later, Plaintiff's fiancé told Defendant Bouck that she had to use the restroom and emphasize that it was urgent.

13. Defendant Bouck allegedly called the front desk to ask Defendant Turnley to come release Plaintiff.

14. Plaintiff and her fiancé moved their seats to the front of the visiting room where the inmates sit when they are returning to their units so that Plaintiff would be able to leave as soon as Defendant Turnley came to release her.

15. After more time had passed, Plaintiff got out of her chair and began to pace the length of the visiting room as she desperately needed to use the restroom. It is the visiting room's policy that visitor are to remain sitting at all times.

16. Defendant Bouck allegedly called the front desk again requesting a correctional officer to release Plaintiff.

3

17. Plaintiff realized that she was not going to be released from the visitation room in time for her to make it to the restroom. She grabbed a stack of napkins from the microwave area in anticipation of urinating her pants and moved to the bottom level of the visiting room where the exit door was located.

18. Plaintiff once again begged Defendant Bouck to release her or to stop a passing correctional officer to let her out. Defendant Bouck stated he could not do that.

19. A few minutes later, at about 7:15 to 7:30 pm, Defendant Bouck came down to the lower level of the visiting room and rung a bell by the door. He let Plaintiff out into the hall and told another correctional officer that Plaintiff needed to be released to use the restroom.

20. In the hall, the two correctional officers spent a few more minutes talking and not opening the gate to release Plaintiff

21. Plaintiff felt herself begin to urinate and was forced to shove a stack of napkins into her underwear while standing in the hall. Plaintiff was forced to urinate her pants in front of these two male correctional officers.

22. Once Plaintiff began to urinate herself, Defendant Turnley finally came around the corner in response to the numerous calls to the front desk. She was smirking at Plaintiff as Plaintiff was urinating on herself.

23. When she finally made it through the gates, Plaintiff rushed to the restroom to finish urinating and clean herself up. She had to dispose of the napkins in the trash can in front of the guard station.

24. Defendant Turnley went to the visitation room while Plaintiff was in the restroom.  Defendant Turnley announced in a loud voice to Plaintiff's fiancé, while laughing, announced what had happened and the rest of the inmates and the visitors could hear.

25. Defendant Turnley announced to Plaintiff's fiancé "Is that your visit because she just pissed on herself".

26. Plaintiff went to the front desk after using the restroom to retrieve her identification. Defendant Turnley was laughing and joking about the situation.

27. Plaintiff was then forced to drive the hour and forty-five minutes commute back to Saginaw in her urine-soaked undergarments and pants.

28. Throughout the entire time that Plaintiff was not released to use the restroom, Defendant Turnley regarded the inhumane treatment of the Plaintiff as a joke.

29. Defendant Bouck refused to further assist Plaintiff despite his knowledge of how seriously she needed to urinate.

30. Plaintiff has suffered extreme mental anguish, shock, mortification, and humiliation as a direct and proximate result of Defendant Bouck's refusal to

address her human needs and Defendant Turnley's refusal to come let her out

from the visitation room and her cruel behavior after Plaintiff urinated herself.

31. Defendants actions were done wantonly, willfully, and maliciously.

## CLAIM I
## VIOLATION OF THE 14TH AMENDMENT

32. Plaintiff Davis alleges and incorporates by reference all allegations contained

in the preceding paragraphs of this Complaint.

33. Plaintiff had a 14th Amendment right to life, liberty, and property that is not

deprived without due process of law.

34. Plaintiff had a substantive due process right to be allowed to have access to a

restroom to urinate unless there existed a prison emergency.

35. Plaintiff had a substantive due process right to urinate in reasonable privacy.

36. Plaintiff's substantive due process rights were violated when Defendants

refused to provide access to a restroom, thus causing Plaintiff to urinate on

herself in public.

## CLAIM II
## FALSE IMPRISONMENT

37. Plaintiff Davis alleges and incorporates by reference all allegations contained

in the preceding paragraphs of this complaint.

38. False imprisonment is the unlawful restraint of an individual's personal liberty

or freedom of movement.

39. Defendants Bouck and Turnely intentionally and unlawfully detained Plaintiff to the prison visitation room for an extended period of time.

40. This was against Plaintiff's will. Plaintiff verbally expressed the need to leave several times.

41. Defendants clearly intended to detain Plaintiff against her will.

42. Plaintiff was clearly unable to leave the visitation room.

## CLAIM III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

43. Plaintiff Davis alleges and incorporates by reference all allegations contained in the preceding paragraphs of this complaint.

44. Intention infliction of emotional distress is extreme and outrageous conduct intended by the defendant that caused the Plaintiff severe emotional distress.

45. Defendants' conduct was both extreme and outrageous when they refused to allow Plaintiff out of the visitation room in a timely manner to use the restroom.

46. This conduct was intentional for both Defendants.

47. Defendant Bouck had the opportunity to release Plaintiff when he was talking to another guard at the visitation room gate.

48. Defendant Turnley ignored multiple calls to come and retrieve Plaintiff from the visitation room.

49. Because of the Defendants' outrageous conduct, Plaintiff was forced to urinate on herself in front of multiple guards.

50. Plaintiff is an adult woman who suffered extreme humiliation and distress when she was forced to urinate on herself.

51. This humiliation was made worse by Defendant Turnley's mocking and laughing. This further shows intent on behalf of Defendant Turnley.

## RELIEF REQUESTED

Wherefore, Plaintiff requests that the court grant the following relief:

a. Issue a declaratory judgment finding that Plaintiff's constitutional rights were violated;

b. Provide an award of compensatory and punitive damages;

c. Award attorneys' fees and costs, and interest pursuant to 42 U.S.C. §1988.

d. Award any such other relief that Plaintiff may be entitled that is just and equitable, or that the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a jury trial in this matter.

Respectfully submitted,

/s/ Daniel E. Manville                      /s/ Ashlee N. Duplessis
Daniel Manville (P39731)                    Ashlee Duplessis (P82896)
Counsel for Plaintiff                       Counsel for Plaintiff
Director, Civil Rights Clinic               DuplessisLaw, PLLC.
MI. State University College of Law         104 W 4th Street
PO Box 1570                                 Suite 300

East Lansing, Michigan 48826          Royal Oak, MI 48067
(517) 432-6866                        (248) 372-1527
daniel.manville@law.msu.edu           ashlee@detroitlegaldefense.com